

5736 N. Tryon Street, Suite 219-B, Charlotte, NC 28213
(t) 704-750-5371 (f) 704-313-9884
cfspllc@gmail.com

2/19/2020

Cabarrus County Clerk of Court
P.O. Box 70
Concord, NC 28026-0070

Defendant: Brad Urban
File Number(s): 19CR055052-53

To The Honorable Christy E. Wilhelm,

I am writing to inform you I evaluated the above defendant on February 12, 2020 at Cabarrus County Jail. I did so in response to the "Motion and Order Appointing Local Certified Forensic Examiner," signed by you on February 5, 2020, which was assigned to me on February 10, 2020. Cardinal Innovations' Project Support Professional Michael Lange scheduled the evaluation appointment on Wednesday, February 12, 2020.

The following sources of information were considered in regards to this evaluation: a face to face interview with the defendant on February 12, 2020, the North Carolina Court System's Court Query website, the North Carolina Offender Information Portal, a copy of the magistrate order related to his recent arrest, a copy of the uniform citation, and information obtained from the Motion and Order Appointing Local Certified Forensic Evaluator form.

Mr. Urban, a 38-year-old Caucasian male, agreed to the evaluation after being informed that information obtained through the interview was not confidential, would likely go into a written report, and that said report would be forwarded to the court. Mr. Urban wore jail-supplied attire with no shoes. Due to his erratic and volatile behavior, Mr. Urban was only allowed out of his cell via an office escort and officers had to remain with him through the interview. Mr. Urban is approximately 6'0" tall and average weight. He is balding and has a beard. Mr. Urban was not neatly groomed and had feces on his swollen feet. He reported purposely putting the feces on his body because "it takes away the sting of my shellfish allergies". He said he has been forced to eat shellfish such as lobster, shrimp, crab, and oysters since he's been in jail [detention officers confirmed that was not true]. Mr. Urban's hands and feet also appeared to be swollen and features scrapes and bruises. There were no identified issues with Mr. Urban's gait, balance, or mobility but he was handcuffed throughout the visit. He sat in an upright position but moved/fidgeted frequently. Mr. Urban made appropriate eye contact through the evaluation. He presented with an anxious affect and congruent mood. Mr. Urban was cooperative throughout the evaluation. The volume, rate, and flow of his speech was normal. Mr. Urban was oriented to

Page 1 of 5

person, place, approximate time, and situation. Mr. Urban denied experiencing hallucinations, delusions, or other perceptual disturbances during the meeting. Mr. Urban denied experiencing thoughts of harming himself or others at time of the evaluation. Despite his report, there was evidence of bizarre behavior and delusional statements based on his reported actions, admitted behaviors, the information presented, and self-harm. When questioned about the self-harm again, Mr. Urban indicated that he has, in the past, "tried to break myself down to build myself up again – like a train; not harm myself". There were deficits in his recall that appeared to be secondary to possible delusional material. Mr. Urban's insight and judgment was impaired this day.

Mr. Urban reported that he was born on August 14, 1982 in Lake City, Florida. He did not provide details on his upbringing, but did not endorse a history of any form of abuse during his childhood. Mr. Urban said he took classes for gifted students while in school. He noted that he started school in Lake City, Florida but later moved to Gastonia, NC. Mr. Urban reported that he graduated from Ashbrook High School in Gastonia, NC in 2002. Mr. Urban explained that he then attended North Carolina State University (Raleigh, NC), where he reported starting school in 1983. He said he received a doctorate degree in "Everything" in 2005. Mr. Urban reported a work history that included mostly manual labor. He noted this longest employment episode was when he was a busboy at Red Lobster. Mr. Urban said he is currently the CEO of a global payment processing company and "sales guy". Despite his reported position, he maintained that he lives off Social Security disability benefits. Mr. Urban indicated that he has six children, but has custody of only two.

Mr. Urban provided a broad, sweeping and bizarre report about his medical history but no specifics. He indicated that he's had every bone in his body broken and has/had every communicable disease one can have. Mr. Urban denied any related hospitalizations because "I just treat it myself". Per detention officers at the jail, Mr. Urban's swollen hands and feet are the result of him kicking and punching the walls of his jail cell. Mr. Urban said he has taken Oxycontin for pain previously.

Mr. Urban reported a history of psychiatric issues, while not being specific about any symptoms or diagnoses. He noted that he has been treated on outpatient basis at Daymark Recovery in Concord, NC "about four years ago". Mr. Urban did explain that he attempted suicide once "about six years ago when I took a handful of pills" and indicated he had thoughts about suicide six months prior to that attempt. He mentioned that he has been prescribed Zyprexa (antipsychotic) previously, but did not give details on most recent or last use. Mr. Urban endorsed a history of previous head trauma but could not provide information on a specific incident.

Mr. Urban endorsed a history of heavy substance use. He indicated that he uses "anything I can get my hands on" and rattled off names of various substances that he has used, including "cocaine, crystal meth, MDMA, uppers, downers, Xanax, Percocet". He did not provide specific details regarding age of first use, current usage pattern, or withdrawal symptoms. Mr. Urban did endorse going through detox once but denied having any other treatment in his history.

No medical or school records were available for review during the evaluation.

Mr. Urban was interviewed about his knowledge of the legal system, his appreciation of his legal situation, and his ability to work rationally with a lawyer; the three prongs of the Dusky standard.

Mr. Urban indicated that a defendant is the "person who is being charged", noted that a defense lawyer "defends that person" and said a defense attorney is "for" the defendant. Mr. Urban explained that a district attorney "prosecutes on behalf of the state" and is "against" the defendant". Mr. Urban defined a judge as the party that "mitigates or litigates, makes sure things are legal" and explained that a judge is not for or against the defendant. Mr. Urban indicated that a jury "decides the fate – guilty or innocent", said a jury is not for or against the defendant, and explained that a jury consists of "12 or 13" jurors. He said all of the jurors have to agree to produce a guilty or not guilty verdict. Mr. Urban provided that a witness "provides testimony" and is expected to be truthful. Mr. Urban indicated that a plea bargain is when "I say yeah I did it, and accept the consequences". Regarding court decorum, Mr. Urban indicated that a person may be charged with "contempt" if there were to yell or disrupt the proceedings, noted that a defendant can speak in court "when asked", and can communicate with the judge "by just yelling it out".

Mr. Urban indicated that his current charges are "DV" charges involving his partner. Mr. Urban recalled that he was trying to get out his home and was being assaulted before he was charged. Mr. Urban indicated that the charges are serious. If he had an opportunity to, he said he'd want to plead "guilty and not guilty" depending on what the actual charges were. Mr. Urban said he'd probably be facing jail time if he were found guilty during a trial but noted he did not know how long any possible sentence may be. Mr. Urban did not know how a plea bargain could help him in his current case, but explained that he doesn't feel a guilty verdict is likely. Mr. Urban is confident is can defend against the charges and hopes he is found not guilty. Mr. Urban said that the worst thing that could happen is prison. Mr. Urban indicated that he is a sex offender and has been to prison up to eight times. There is no indication that Mr. Urban is a sex offender or has been to any NC state prison after researching the North Carolina Sex Offender Registry website and the NC Inmate/Offender online website. A federal prison history was not able to be investigated.

Mr. Urban could not recall having an attorney as he noted that he has been trying to hire a private attorney. He explained that he has worked with private lawyers and public defenders previously. Mr. Urban said if he had disagreements with his attorney, he'd likely "yell and scream at them and then fire them and get a new one". Mr. Urban denied having a special way of communicating with attorneys. Mr. Urban stated that he can recall what happened to get him arrested and could explain it to his attorney. Mr. Urban acknowledged that there is evidence that could be used to try to convict him in court, but said there is also evidence that help him in court. Mr. Urban indicated that he wants to be heard, so he would want to testify if there was a trial.

Per the Motion and Order Appointing Local Certified Forensic Evaluator, submitted by his assigned attorney, H. Jay White, Sr.:

*"Defendant refuses to dress, leaves his clothing in the toilet, and allows the toilet water to remain on the floor of his cell. Defendant is not provided a mat to sleep on since he attempts to eat it".*

Mr. Urban presented with symptoms that are likely related to presence of a mental illness or defect. The presence of a mental illness or defect, in theory, could hamper an individual's ability to proceed. Prior to engaging, detention officers corroborated the report of the attorney and explained that Mr. Urban had been covering his body with his own feces. There was visual evidence and Mr. Urban's own report to confirm this occurrence. Additionally, Mr. Urban's feet and hands were swollen from self-inflicted injuries secondary to him punching and kicking walls. Mr. Urban provided bizarre details and interjected delusional material throughout the evaluation that did not appear to be malingered.

Mr. Urban demonstrated an adequate understanding of the legal system. He was insightful about the roles of key court personnel and the structure of court. Mr. Urban had an appreciation of his legal situation. He knew that he is facing assault-related charges. Mr. Urban considers the charges serious, understood that he could face consequences, and hopes for a resolution in his favor. Mr. Urban was unaware of his attorney despite have an attorney in place. He noted that he could recall what led up to this charges when he does have an attorney in place and is willing to engage as needed. Mr. Urban, however, interjected probable delusional and bizarre material throughout his engagement that would likely inhibit his ability to rationally work with his attorney. Therefore, it is this evaluator's opinion that Mr. Urban is not capable to proceed at this time.

If Mr. Urban were to receive and comply with appropriate education and treatment, it is my opinion that Mr. Urban likely could be restored to capacity. If the Court determines this is a violent charge, it would result in involuntary admission under 15A-1003 to the state hospital covering the county bringing the charge. If the Court determines this is a non-violent charge, education should occur in the community.

Recommendations:

Should Mr. Urban continue self-harm at the facility/jail he is located at, he should be involuntarily committed for psychiatric treatment as soon as possible.

Mr. Urban should be assessed via Comprehensive Clinical Assessment at a local community-based provider of his choice to determine mental health and substance use treatment needs. Mr. Urban should follow all recommendations of treatment.

Page 4 of 5

5

HL_007
Case 5:24-cv-00686-BO-KS    Document 24-14    Filed 02/04/25    Page 4 of 11

**NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES, DIVISION OF
STATE OPERATED FACILITIES**

Central Regional Hospital
Butner, North Carolina

**FORENSIC EVALUATION**

URBAN, Brad
DOB: 08/14/82
MRUN: 1-13-75-49

CABARRUS
CASE FILE: 19 CRS 055082

Nancy E. Laney, Ph.D., C.R.C.

DATE OF REPORT: April 13, 2020

DATE OF CONSULTATION: April 01, 2020

**IDENTIFYING DATA:** Mr. Brad Urban Jr. is a 37-year-old male who was referred to Central Regional Hospital (CRH) for an evaluation of his capacity to proceed to trial on a felony charge of Interfering with Jail/Prison Fire System which allegedly occurred 12/16/19.

The Motion and Order Committing Defendant to Central Regional Hospital (CRH) for Examination was signed on 02/26/20 reads,

> "Defendant refuses to dress, leaves his clothing in the toilet, and allows the toilet water to remain on the floor of his cell. Defendant is not provided a mat to sleep on since he attempts to eat it. Defendant smears fecal matter on the walls and does not hydrate or regularly eat which requires that he be hospitalized periodically for dehydration."

On 03/30/20, the Honorable Martin McGee ordered that amid the COVID-19 event, Mr. Urban "should be made available for via video conference to a physician in Butner for him or her to determine capacity of the Defendant if in the professional judgment of the physician, the evaluation can be appropriately done via video conference."

Google Meet was utilized by this evaluator in a private and quiet space at Central Regional Hospital and the interview was not visually or verbally recorded. Mr. Urban appeared to be, and asserted that he was, in a private room where the officer could view him from outside the room. Mr. Urban stated that the room had a facility camera in but he did not know if the camera was recording, visually or verbally. This evaluator could see Mr. Urban's face and just below his shoulders. The picture quality, sound and lighting were considered good by this evaluator and corroborated by Mr. Urban. Rapport was established and the interview proceeded. The use of video conferencing did not appear to negatively impact the evaluation process or the results obtained.

On this charge, Mr. Urban is represented by Jay White (71 McCachern Boulevard SE, Concord, NC 28026; 704-786-5161) and the District Attorney is Roxann Vaneekhoven, (P.O. Box 70 Concord, NC 28206; 704-262-5510).

**STANDARD:** As defined by North Carolina General Statute 15A-1001(a): "No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner."

NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES, DIVISION OF
STATE OPERATED FACILITIES

Central Regional Hospital
Butner, North Carolina

FORENSIC EVALUATION

URBAN, Brad
DOB: 08/14/82
MRUN: 1-13-75-49

CABARRUS
CASE FILE: 19 CRS 055082

Nancy E. Laney, Ph.D., C.R.C.

**LIMITS TO CONFIDENTIALITY:** Prior to the interview, Mr. Urban was informed of the purpose of the evaluation, the lack of confidentiality of its results and that he had the right to refuse to answer any questions during the evaluation. He was also informed that the District Attorney requested the evaluation and that information gathered in the evaluation would eventually inform a written report which would be sent to his attorney, the District Attorney, and the Judge. He was told that the Judge ordered the evaluation to be completed through teleconferencing, if possible, due to public health concerns in transporting him to and from the jail during the current COVID-19 crisis. With repeated instruction, Mr. Urban understood the above information and agreed to participate.

**DATA BASIC TO OPINIONS:** The opinions expressed in this report are based upon a clinical and forensic interview via teleconferencing with Mr. Urban for approximately 65 minutes and review of the following information obtained by Mr. Charles Cook and Ms. Keshia Perry, forensic case specialists:

- Motion and Orders Committing Defendant to Central Regional Hospital;
- Warrant for Arrest;
- Telephone contact with jail staff;
- Jail booking report;
- Local forensic evaluation report by Marcus Boyd, MA dated 02/19/20;
- Telephone contact with defense counsel;
- VINELink photo dated 12/14/19;
- Jail medication administration record;
- Healthcare Enterprise Account Receivable and Tracking System database;
- Daymark Recovery Services medical records from 2014 to 2020.
- North Carolina Administrative Office of the Courts website calendar; and
- North Carolina Department of Public Safety website information;

**RELEVANT BACKGROUND:** The following biopsychosocial history was constructed from Mr. Urban and collateral information noted above. To the extent possible, collateral records were obtained to corroborate information provided by Mr. Urban. Mr. Urban gave permission for this evaluator to contact his father but attempts to contact him were unsuccessful. Mr. Urban's self-report was mostly consistent with the available collateral information. Inconsistencies or additional information are noted accordingly.

Developmental and Family: Mr. Urban stated that he was born and raised in Lake City, Florida by his parents with an older brother. He described his childhood as "awesome" and denied experiencing any neglect or abuse. He stated that his mother did not use alcohol or illicit substances during his gestation and there were no problems with his birth or development. He denied any family history of intellectual problems, mental illness, alcohol or substance abuse or legal problems.

NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES, DIVISION OF
STATE OPERATED FACILITIES

Central Regional Hospital
Butner, North Carolina

FORENSIC EVALUATION

URBAN, Brad
DOB: 08/14/82
MRUN: 1-13-75-49

CABARRUS
CASE FILE: 19 CRS 055082

Nancy E. Laney, Ph.D., C.R.C.

**Academic:** Mr. Urban disclosed that he graduated from North Carolina State University in December 2005 with a Bachelor of Science degree in chemical and textile engineering.

**Military and Vocational:** Mr. Urban stated that he did not enlist in the military. He initially worked for Tencarva Machinery Company in South Carolina and was fired. He relayed that he worked mostly in sales positions thereafter and was working for Global Payments/Total Systems Services prior to his arrest. He denied receiving social security disability insurance.

**Social and Adaptive Functioning:** Mr. Urban articulated that he married his wife in October 2011 and they have a seven-year old girl and a six-year-old boy. He voiced that he was living with his family prior to his arrest in November 2019. He commented that he enjoyed playing with his children and golf during his leisure time. He denied any problems with activities of daily living.

*According to the jail booking report,* Mr. Urban was arrested on 12/14/19.

**Medical:** Mr. Urban stated that he had a concussion with brief loss of consciousness in high school when he played soccer but did not go to the hospital. He denied having any seizures, headaches or blackouts. He articulated that he had high cholesterol and in the past and took medications "off and on."

**Substance Use:** Mr. Urban voiced that he used alcohol and marijuana daily since middle school but was vague in describing the quantity of what he used. He verbalized that he used Adderall in high school whenever he could "get it", mushrooms a few times in college, sporadically used benzodiazepines and cocaine. He denied using any substance intravenously. He said he received substance use treatment when he was hospitalized for mental health reasons.

**Mental Health:** Mr. Urban shared that he has "Bipolar Disorder" and was hospitalized once for a suicide attempt when he overdosed on sleeping pills. He verbalized that he felt that he was a burden to his family after his son was born and was hospitalized "somewhere in Greensboro." He described various places he was hospitalized or where he received treatment but said he did not recall exact names and dates. For example, he was first hospitalized in Gastonia in 2005, went to "Randolph", saw Dr. Mehta privately, was hospitalized in Charlotte where he met his wife, and received treatment at Daymark in Concord. He acknowledged symptoms of having high and low emotions but did not see this as problematic. He also shared that he does not have a need for sleep and will sleep depending on "the position of the sun." He endorsed having racing thoughts in the past and has learned coping skills to try and slow them down and stay focused. He noted that he sometimes sees shadows of things such as "sunglasses" that floated across a television screen. He said he was prescribed Adderall by his primary care physician, Dr. Long.

*According to the Central Regional Hospital Healthcare Enterprise Account Receivable and Tracking System,* Mr. Urban was admitted to Broughton Hospital from 07/14/17 until 10/20/17.

NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES, DIVISION OF
STATE OPERATED FACILITIES

Central Regional Hospital
Butner, North Carolina

FORENSIC EVALUATION

URBAN, Brad
DOB: 08/14/82
MRUN: 1-13-75-49

CABARRUS
CASE FILE: 19 CRS 055082

Nancy E. Laney, Ph.D., C.R.C.

---

*A discharge summary from Broughton Hospital (BH)* was requested but was unable to be obtained since this evaluator did not have Mr. Urban's written permission and box #2 was not checked on the Motion and Order Committing Defendant to Central Regional Hospital dated 02/26/20.

*Records from Daymark Recovery Service* showed that Mr. Urban intermittently received services from 2014 until 2018. He reported that he experienced mood swings and disturbances for two or three years prior to his assessment and was diagnosed with Bipolar Disorder in 2005. He disclosed being hospitalized in 2004 at Gaston Memorial, in 2011 at CMC Randolph, in 2014 at Old Vineyard, and in 2017 at Broughton Hospital. Records indicated that he was also diagnosed with Alcohol Use Disorder, severe, Cannabis Use Disorder, moderate, and Other or Unspecified Stimulant Use Disorder, mild. He was prescribed various medications but usually discontinued taking them because he did not see the need or could not afford the cost. He was also treated for attention Deficit Hyperactivity Disorder symptoms. Prior to his current detainment, he was last seen on 05/08/18 for a medication refill. He was taking Abilify 15 mg at bedtime and Depakote Extended Release 500 mg two at bedtime.

During detainment for the current charges, Mr. Urban was seen in the Cabarrus County jail by Daymark mental health staff (e.g., on 02/06/20 at 12:45 am for two hours, 8:45 pm for two hours, on 02/07/20 for 50 minutes, 02/09/20 for 45 minutes, 02/11/20 for two hours, 02/13/20 for two hours, and 02/14/20 for 40 minutes). He was placed on suicide watch for making a suicide statement because he wanted the officers to listen to him. During his mental health visits, his thinking vacillated from being logical and coherent to having rapid speech and tangential and circumstantial thinking. His mood was observed to range from being euthymic, anxious, or hostile. He denied having suicidal and homicidal thoughts then endorsed having these thoughts. It was noted that he "ate paint in his cell" and rubbed feces all over the walls, the door, and his body. His father confirmed his history of mental illness and he was referred for a psychiatric evaluation. His mood improved when medication was re-started and it was eventually recommended that suicide watch discontinue.

Legal: Mr. Urban denied having any legal history except for some speeding tickets.

*According to the North Carolina Department of Public Safety (DPS) public access website information,* Mr. Brad Urban had no criminal history.

**MENTAL STATUS AND BEHAVIORAL OBSERVATIONS DURING THE INTERVIEW:** Mr. Brad Urban is a 37-year-old male who was interviewed by this evaluator with Hsiao-Wen Wang, Ph.D., post-doctoral fellow in attendance but not in view of the camera. Mr. Urban was dressed in jail issued clothing; only his shirt was visible to this evaluator. His hygiene could not be assessed. He was balding and his beard and mustache were unkempt. He appeared thinner than he did in a VINELink photo dated 12/14/19. He maintained eye contact on the screen the entire session. There were no observations of psychomotor agitation or slowing above his chest.

Form No. DMH 2-70-90A

FORENSIC EVALUATION

NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES, DIVISION OF
STATE OPERATED FACILITIES

URBAN, Brad
DOB: 08/14/82
MRUN: 1-13-75-49

Central Regional Hospital
Butner, North Carolina

CABARRUS
CASE FILE: 19 CRS 055082

FORENSIC EVALUATION

Nancy E. Laney, Ph.D., C.R.C.

---

Overall, Mr. Urban was alert and oriented to person, place, situation, date, and birth date but incorrectly said he was 38 years old. His attention, concentration and memory were adequate throughout the interview. He accurately spelled the word "adult" forward and backward. He correctly repeated up to four digits forward and four digits backwards. With serial mental calculations, he correctly mentally subtracted 100 minus 7 and 100 minus 3, four times respectively. He learned three words after one trial. After a five-minute delay, he recalled the three words with multiple prompts. He correctly named four cities in the United States. He demonstrated abstract thinking in comparing two similar words and with interpreting proverbs. For example, he responded that *a table and a chair* are alike because "one you sit, they are complimentary" and *chocolate and vanilla* are alike because they are "flavors." In his understanding of the meaning of proverbs, he explained the phrase *don't cry over spilled milk* meant "what's done is done" and that *don't judge a book by its cover* meant "you don't know what's inside until you explore something and not make assumptions." He showed good attention to essential details and good judgement with two simple but practical verbal problem solving situations.

Mr. Urban's speech was of normal tone and volume. He spoke quickly but his speech was not pressured. At time, he had some word finding difficulty, delayed rate of responding, delayed recall, and facial responses that suggested he was thinking or processing the questions. He expressed that he felt "slowed down" and like "I'm slurring my words." His conversation was logical and goal directed. There was no evidence of loose associations or odd thinking or guardedness. He denied experiencing any verbal or visual stimuli unseen by others (e.g., hallucinations).

Mr. Urban verbalized that his mood was "extremely frustrated. I want to go home to my family and see my wife. It's infuriating." His affect was mostly normal. He smiled and responded with appropriate humor on one occasion. He denied having any suicidal or homicidal thoughts, feelings, or intentions of hurting himself or others. He offered that he previously expressed suicidal ideation in the jail "to get attention and get someone to hear what the fuck I have to say." He was asked about other behaviors noted in the court order and the local evaluation report and repeated that he was "trying to get attention because I am ready to go home." He relayed that he continues to be housed on suicide watch and sleeps sporadically. He voiced that the light in his cell remains on and that there is no cue for him to sleep. Regardless, he does not feel the need for sleep. He stated that he is always craving food and eating as much as possible. He asserted that he takes Olanzapine (an antipsychotic) once daily. He was cooperative throughout the interview.

*Jail medical records* showed that Mr. Urban was prescribed Olanzapine 5 mg for two days, 10 mg for 16 days, and 15 mg since 03/19/20. *Jail staff* noted that he was in isolation, not always alert on oriented and was "temperamental."

FORENSIC INTERVIEW: Utilizing a semi-structured interview and open-ended and multiple-choice questioning, Mr. Urban was interviewed regarding his factual and rational understanding of the legal system, the charges against him, and his ability to work effectively with his attorney.

NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES, DIVISION OF
STATE OPERATED FACILITIES

URBAN, Brad
DOB: 08/14/82
MRUN: 1-13-75-49

Central Regional Hospital
Butner, North Carolina

CABARRUS
CASE FILE: 19 CRS 055082

FORENSIC EVALUATION

Nancy E. Laney, Ph.D., C.R.C.

---

### *Understanding the legal system*

Regarding the job of his defense attorney Mr. Urban stated, "he represents me." He described the District Attorney's job as "represents the State." He voiced that the jury "determines innocence or guilt." He indicated that the judge "mediates basically." He was briefly educated about the role of the judge and understood upon follow up questioning. He relayed that in a jury trial a unanimous verdict is required of all 12 jurors.

Mr. Urban understood the pleas of *Guilty* and *Not Guilty*. He stated that *Not Guilty by Reason of Insanity (NGRI)* meant that "I didn't have control over my actions." He was briefly educated and referred to his attorney for additional information. He shared that he previously pled *No Contest* to a speeding ticket and understood the concept when explained. He initially had difficulty explaining what evidence meant but when prompted to relax and think about how it was used in court he verbalized "the facts of the case." He gave examples of potential and plausible evidence in his case. He answered that a witness was "someone who testifies in the case" and responded that a witness could be for or against him. He described a plea bargain as pleading guilty and "accepting a lesser charge."

### *The charge against him and his own situation in reference to the proceedings*

Mr. Urban accurately named the felony charge of interfering with the jail's fire system and what was alleged to have happened. He also spontaneously volunteered that he was also accused of two misdemeanor charges at the time of his arrest. He discussed that a felony was a more serious charge than a misdemeanor and if he were to be convicted of a felony, he would lose his right to vote. He did not know if he would be sentenced to incarceration or probation if convicted on these charges but knew he could ask his attorney.

### *Assisting his attorney*

Mr. Urban expressed that his father retained an attorney for him, "Jay White" but that he had not met with his attorney. He responded that he trusted his attorney to do his job in defending him. He briefly and rationally explained his side of the story regarding the allegations against him. He understood that he had a right to testify on his behalf and would make that decision with his attorney. He expressed that he understood appropriate courtroom behaviors and would use learned coping skills (e.g., deep breathing and telling himself to be calm) in court to deal with his stress.

SUMMARY, ANALYSIS AND OPINIONS: Mr. Brad Urban is a 37-year-old male who has a reported history of mental illness (e.g., Bipolar Disorder) and a history of substance use. He was prescribed antipsychotic medication in the jail and his thinking was logical and goal directed. He had some mild information processing delays. With repetition, he understood the evaluator and had no difficulty communicating. His affect was appropriate and he identified coping skills he could use when stressed.

| | |
|---|---|
| NORTH CAROLINA DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES, DIVISION OF<br>STATE OPERATED FACILITIES | URBAN, Brad<br>DOB: 08/14/82<br>MRUN: 1-13-75-49 |
| Central Regional Hospital<br>Butner, North Carolina | CABARRUS<br>CASE FILE: 19 CRS 055082 |
| FORENSIC EVALUATION | Nancy E. Laney, Ph.D., C.R.C. |

Mr. Urban had good factual knowledge of his charges and the legal system and demonstrated good reasoning skills in defending himself against his charges.

Although the determination of Mr. Urban's capacity to stand trial is ultimately a decision for the Court, it is the opinion of the evaluator that Mr. Urban's mental illness does not preclude him from proceeding to trial. He is able to comprehend his own situation in reference to the proceedings and to assist in his defense. Based on these factors, Mr. Urban is currently viewed as *CAPABLE* of proceeding to trial.

RECOMMENDATIONS: Mr. Urban requires continued compliance with his medication regimen in order to maintain stability in his mental status.

*[signature]*

Nancy E. Laney, Ph.D., C.R.C.
Senior Psychologist, Forensic Services, (919) 575-7323

Cc: District Attorney, Defense Attorney, and Clerk of Court