IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-00686

| | |
|---|---|
| KATHERINE MOORE, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **MEMORANDUM IN SUPPORT OF** |
| ) | **MOTION TO DISMISS** |
| MIKE SILVER, in his individual and official ) | |
| capacities as Training and Services Director ) | |
| for North Carolina Administrative Office of ) | |
| the Courts, ) | |
| ) | |
| Defendant. ) | |

## INTRODUCTION

This lawsuit arises from Plaintiffs' family court disputes, including custody, child support, and protective order proceedings in North Carolina state courts. Plaintiffs allege that Defendant Silver failed to enforce federally mandated protections under VAWA and Title IV-D, resulting in systemic bias against domestic violence survivors. However, Plaintiffs' claims suffer from multiple fatal deficiencies.

First, Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. Second, the Eleventh Amendment bars the official capacity claims. Third, Plaintiffs lack standing. Fourth, VAWA and Title IV-D do not create private rights of action. Finally, Plaintiffs fail to state a claim. Alternatively, the *Younger* abstention and domestic relations doctrines bar this Court from reviewing state court determinations. For these reasons, the Court should dismiss the Amended Complaint.

1

## STATEMENT OF THE CASE

This lawsuit was originally filed in the U.S. District Court for the Eastern District of Virginia on November 20, 2024. [DE 1] On December 2, 2024, the Eastern District of Virginia issued an order transferring the case to the Eastern District of North Carolina. [DE 3] On December 30, 2024, Plaintiffs filed an Amended Complaint and supporting memorandum [DE 11, 12] and an "Emergency Motion for Preliminary Injunction" and supporting memorandum. [DE 9, 10] On January 9, 2025, the Court issued summons for Mike Silver. [DE 15] On January 29, 2025, counsel for Defendant Silver filed a moved to extend Defendant Silver's response to the Amended Complaint and Motion for Preliminary Injunction. [DE 17, 18] On January 31, 2025, Plaintiffs filed another "Emergency Motion for Preliminary Injunction." [DE 21] On February 3, 4, and 11, 2025, Plaintiffs filed additional documents. [DE 23, 24, 25] On February 11, 2025, Plaintiffs filed a proposed sealed exhibit, and motion to seal exhibit. [DE 26, 27]

Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983 for: (1) denial of due process and extrinsic fraud [DE 12, pp. 2-7]; (2) failure to enforce VAWA mandates [DE 12, pp. 8-12]; (3) violations of Title IV-D [DE 12, pp. 13-17]; and (4) equal protection violations based on gender bias. [DE 12, pp. 18-23]

Plaintiffs seek a declaratory judgment that Silver violated their constitutional rights and failed to enforce VAWA, an injunction requiring Defendant Silver to "enforce trauma-informed and victim-centered practices in North Carolina courts and halt enforcement of existing custody and child support orders, train all court and law enforcement personnel on the handling of domestic violence and regular audits, and $5 million in damages plus punitive damages and attorneys' fees. [DE 11, pp. 10-11]

## I. STATEMENT OF FACTS[1]

Plaintiffs are three women who allege that systemic failures in the North Carolina family court system deprived them of their constitutional and statutory rights. Each Plaintiff complains of judicial misconduct, venue manipulation, due process violations, and financial penalties imposed without hearings, all of which they claim disproportionately harm domestic violence survivors [DE 11, pp. 3-8, DE 12 at 3-7]

*Katherine Moore*

Plaintiff Katherine Moore is a resident of Wake County, North Carolina, and the mother of a toddler [DE 11, p. 3]. She alleges that in 2021, she sought a Domestic Violence Protective Order (DVPO) against the father of her child, Scott Mills, after he allegedly assaulted her while she was pregnant [DE 11, p. 3]. She claims that she recorded an audio file of a hospital visit in which she and Mr. Mills discussed the assault with medical staff, but that in March 2021, Judge Julie Bell—who initially allowed the recording into evidence—later excluded it after only three seconds were played [DE 11, p. 4]. Ms. Moore also alleges that in October 2023, Judge Braun made findings that were erroneous. [DE 11, pp. 4, 6-7]

Ms. Moore further claims that the family court improperly allowed Mr. Mills to file for custody in Nash County, even though neither party lived or worked there at the time. [DE 11, p. 6; DE 12, pp. 15-16] Despite her timely motion to transfer venue, she alleges that her motion was delayed for over a year and ultimately denied after several custody orders had already been entered [DE 11, pp. 6, 8; DE 12, pp. 4-5, 9-10, 15, 21].

---

[1] Given the requirement to construe *pro se* filings liberally, this memorandum treats both Docket Entry 11 and Docket Entry 12 as comprising the Amended Complaint.

Additionally, Ms. Moore alleges that the court wrongfully diverted $1,000 from her child support payments to opposing counsel without a hearing, and that the presiding judge later stripped her of indigent status to force her compliance with this financial penalty [DE 12, p. 10].

*Amy Palacios*

Plaintiff Amy Palacios claims she endured years of judicial misconduct and systemic bias while attempting to protect her children from her abusive ex-husband, Brad Urban [DE 11, pp. 4-5, 7]. She alleges that in 2022, the court ordered her to pay Mr. Urban $70,000 as part of an equitable distribution settlement and that opposing counsel, Jay White, wrongfully controlled access to her retirement funds and prevented her from fulfilling this obligation [DE 12, pp. 7, 11].

Ms. Palacios further claims that while she was declared indigent by the court, she was still ordered to pay $15,000 in attorney's fees to opposing counsel without a hearing [DE 12, p. 7]. She also alleges that she was threatened with jail unless she immediately paid $5,000 to opposing counsel during a court hearing in February 2024 [Id.].

Additionally, Ms. Palacios asserts that Mr. Urban was declared incompetent in multiple legal proceedings to evade criminal liability but was still granted unsupervised visitation with their children despite his history of domestic violence [DE 11, p. 7].

*Edyta Basista*

Plaintiff Edyta Basista alleges that she was wrongfully arrested on September 11, 2024, based on an outdated email sent four years prior, and that opposing counsel deliberately sought to exploit her PTSD from childhood abuse and the 9/11 attacks to attack her credibility in court [DE 11, p. 7; DE 12, p. 3].

She further alleges that North Carolina's courts failed to implement trauma-informed judicial practices under VAWA, which she argues contributed to the denial of protective orders and enforcement of child custody laws in ways that endangered her and her children [DE 12, p. 3].

*Plaintiffs' Allegations Against Defendant Silver*

Defendant Mike Silver is the Training and Services Director for the North Carolina Administrative Office of the Courts (AOC). [DE 11, p. 3; DE 12, p. 1] Plaintiffs do not allege any direct involvement by Silver in their cases. Instead, they argue that Silver failed to enforce trauma-informed judicial policies and did not ensure compliance with federal mandates under VAWA and Title IV-D. [DE 11 p. 3; DE 12, pp. 8-9] Plaintiffs contend that Silver's failure to train judges and enforce these policies allowed systemic bias and due process violations to occur. [Id.] However, their complaint contains no factual allegations connecting Silver's administrative duties at AOC to their alleged injuries.

## II.   LEGAL STANDARD

### A.  RULE 12(b)(1)

This Court must dismiss all or part of a complaint over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This threshold question shall be addressed by the court before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). A plaintiff has the burden of proving that jurisdiction exists. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B.  RULE 12(b)(6)

Rule 12(b)(6) concerns the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The well-pleaded allegations are taken as true,

5

including all reasonable inferences therefrom, and the complaint is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). Nonetheless, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A complaint must contain sufficient factual allegations, which accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

III. LAW AND ARGUMENT

A. *ROOKER-FELDMAN* DOCTRINE BARS PLAINTIFFS' CLAIMS

The *Rooker-Feldman* doctrine precludes federal district courts from reviewing or invalidating state court judgments, even when constitutional claims are raised. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Under this doctrine, lower federal courts lack jurisdiction over claims that are "inextricably intertwined" with state court decisions. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Shooting Point, LLC v. Cumming*, 368 F.3d 379, 383 (4th Cir. 2004).

Plaintiffs' Amended Complaint seeks federal review of state court decisions concerning child custody, domestic violence protective orders, and child support enforcement. Specifically, Plaintiffs argue that North Carolina family courts engaged in extrinsic fraud by issuing unlawful rulings and disregarding evidence [DE 12, pp. 7-8, 11-

6

18], that they were denied due process and equal protection in child custody and support proceedings [DE 12, pp. 13-23], and that the state court system is biased against domestic violence survivors, leading to erroneous custody determinations. [DE 12, p. 23] Although Plaintiffs frame their claims as constitutional challenges, the relief sought effectively requires this Court to review and reject state family court judgments and the claims are barred under *Rooker-Feldman*.

Additionally, Plaintiffs claims are inextricably intertwined with the state court judgments. Plaintiff alleges that the state court decisions violated their constitutional rights by denying protective orders based on erroneous findings, refusing to change venue in child custody cases, imposing financial penalties without due process, and favoring abusers in custody and child support determinations. Each of these claims seeks to overturn or relitigate state court rulings, making them inextricably intertwined with those decisions and thus barred by *Rooker Feldman*.

Plaintiffs' attempt to circumvent *Rooker-Feldman* by alleging extrinsic fraud in their family court proceedings. Although the Ninth Circuit announced a narrow extrinsic fraud exception to *Rooker-Feldman,* the Fourth Circuit has not. *Compare Kougasian v. TMSL, Inc.* 359 F.3d 1136 (9th Cir. 2004); *Jordahl v. Democratic Party*, 122 F.3d 192, 20 n.11 (4th Cir. 1997) (noting that Fourth Circuit precedent allowing collateral attack on state court judgment for fraud "was made within the context of res judicata, and not *Rooker-Feldman*".)

In any event, Plaintiffs fail to allege sufficient facts to support a finding of extrinsic fraud in their state court proceedings. "Extrinsic fraud is conduct which prevents a party from presenting his claim in court." *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981); *see also Stokley v. Stokley*, 30 N.C. App. 351, 227 S.E.2d 131, 134 (N.C. Ct. App. 1976) ("Fraud

7

is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court."). Plaintiffs broadly allege extrinsic fraud within their state court cases, contending that judges' rulings and orders denied them the opportunity to present their cases. These accusations, however, fail to satisfy the heightened pleading standards for fraud claims under Fed. R. Civ. P. 9(b). Plaintiffs do not contend they were denied access to the courts, but rather that the state courts wrongly decided their cases – which remains within *Rooker-Feldman's* bar.

### B. PLAINTIFFS LACK STANDING

To establish standing under Article III of the U.S. Constitution, a plaintiff must demonstrate: (1) an injury-in-fact—a concrete and particularized harm that is actual or imminent, not conjectural or hypothetical; (2) traceability—a direct connection between the alleged injury and the defendant's conduct; and (3) redressability—the likelihood that a favorable court ruling will remedy the harm. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs lack standing because their alleged injuries stem from state court decisions, not Defendant Silver's conduct; they fail to allege a direct, personal injury caused by Silver's actions; and their requested relief—overturning state court rulings and ordering systemic reforms—is speculative and non-justiciable.

1. **Plaintiffs fail to allege a concrete and particularized injury.**

First, Plaintiffs fail to allege a concrete and particularized injury traceable to Defendant Silver. To establish standing, a plaintiff must show a particularized injury that affects them in a personal and individual way. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Here, Plaintiffs allege that they were denied due process in child custody and support proceedings, state courts engaged in systemic gender bias and judicial misconduct, and VAWA and Title IV-D protections were not properly enforced. These allegations fail to establish an injury-in-fact.

First, Plaintiffs' generalized grievances about the family court system do not confer standing. Plaintiffs' claims about systemic judicial bias and extrinsic fraud are broad and speculative, rather than concrete and particularized. Courts have repeatedly held that generalized grievances about systemic legal deficiencies do not establish standing. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007) (no standing where plaintiffs allege only a generalized grievance about government action).

Second, Defendant Silver's role is too attenuated to confer standing. The Supreme Court has held that a plaintiff lacks standing when the alleged harm is caused by independent third parties not before the court. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976). Plaintiffs' complaints arise from judicial decisions made by state family court judges, yet they seek to hold Silver, an administrative official, responsible for those rulings. Because Plaintiffs' alleged harms were caused by state court judges—not by Silver—they lack standing to sue him.

2. **Plaintiffs' alleged injuries are not traceable to Defendant Silver.**

The traceability requirement of standing demands that a plaintiff's injury be fairly traceable to the defendant's conduct. *See Allen v. Wright*, 468 U.S. 737, 751 (1984). The causation element of standing requires "a causal connection between the injury and the conduct complained of[.]" *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013). Furthermore,

"the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. at 234-35.

Plaintiffs' grievances concern child custody, child support, and protective orders, all of which are decided by state court judges, not Defendant Silver. The North Carolina Administrative Office of the Courts, under which Defendant Silver is employed, is limited to its statutory authority set out in N.C. Gen. Stat. § 7A-343. Silver's role as Training and Services Director for the North Carolina Administrative Office of the Courts does not include adjudicating cases, enforcing family court orders, or overseeing judicial rulings.

Moreover, even if Silver were responsible for training or administrative oversight, family court judges enjoy absolute judicial immunity from suit for their rulings. Since federal courts cannot hold judges personally liable for their decisions, Silver cannot be held secondarily liable for their judicial acts. Because Plaintiffs fail to establish a direct causal link between Silver's actions and their alleged injuries, their claims must be dismissed for lack of standing.

### 3. Plaintiffs' claims are not redressable.

To satisfy the redressability prong of standing, Plaintiffs must show that a favorable ruling would likely remedy their injuries. *See Lujan*, 504 U.S. at 561. They fail this test because federal courts lack jurisdiction to review state court decisions under the *Rooker-Feldman* doctrine (discussed in Section IV). In addition, even if the Court compel North Carolina courts to adopt trauma-informed practices, this injunction would not change the outcome of their past cases. Because Plaintiffs' requested relief would not redress their past harms or change family court rulings, their claims must be dismissed for lack of standing.

In sum, Plaintiffs lack Article III standing because they fail to allege a concrete injury directly caused by Defendant Silver, and they seek relief that a federal court cannot provide. Their grievances are generalized, speculative, and improperly directed at an administrative official who does not control family court rulings. Moreover, their claims are neither traceable to Silver nor redressable by this Court. Accordingly, this Court must dismiss the Amended Complaint for lack of standing under Rule 12(b)(1).

### C. THE ELEVENTH AMENDMENT BARS THE OFFICIAL CAPACITY CLAIMS

The Eleventh Amendment is a complete bar to suit against a state in federal court. *See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A state's sovereign immunity extends to state officers acting in their official capacity. *Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir. 2003). After all, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Just "as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst*, 465 U.S. at 101–02; *Kitchen v. Upshaw*, 286 F.3d 179, 183–84 (4th Cir. 2002). The Eleventh Amendment categorically bars monetary damages against state officials acting in their official capacities. *See Edelman*, 415 U.S. at 663; *see also Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir. 1995) (noting compensatory and punitive damages are "unavailable in official capacity suits").

No exception to Eleventh Amendment immunity applies. Congress has not abrogated Eleventh Amendment immunity under § 1983. The Supreme Court has repeatedly held that Congress did not abrogate sovereign immunity when enacting 42 U.S.C. § 1983. *See Quern v.*

*Jordan*, 440 U.S. 332, 345 (1979). North Carolina has not consented to be sued in federal court for claims brought under § 1983, VAWA, or Title IV-D. Therefore, Plaintiffs request for compensatory and punitive damages for alleged constitutional violations and statutory violations under VAWA and Title IV-D.

The *Ex Parte Young* doctrine established a third, narrow exception to sovereign immunity to seek prospective relief against state officers who are charged with enforcing an unconstitutional state law. Under this doctrine, a plaintiff must sue an official who is "directly involved" in enforcing state laws and policies that are contrary to federal law. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 332 (4th Cir. 2001).

The *Ex parte Young* doctrine does not apply here because Plaintiffs seek retrospective relief rather than an order preventing future harm. The *Ex parte Young* exception applies only to forward-looking injunctive relief, not to remedies that require undoing past state court rulings. *See Green v. Mansour*, 474 U.S. 64, 68 (1985). Plaintiffs seek an injunction to overturn prior child custody rulings, modify child support orders, and declare protective orders improperly denied. These claims constitute retrospective relief, and are barred by the Eleventh Amendment.

In addition, to invoke *Ex parte Young*, Plaintiffs must allege an ongoing violation of federal law that can be remedied through prospective injunctive relief. *See Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002). Plaintiffs' allegations concern past injuries—such as denied protective orders, past child custody decisions, and financial penalties imposed by family courts. Because Plaintiffs do not allege an ongoing violation, their request for injunctive relief does not meet the *Ex parte Young* standard and must be dismissed.

Accordingly, this Court must dismiss all claims against Defendant Silver in his official

capacity for lack of subject matter jurisdiction under Rule 12(b)(1) because they are barred by the Eleventh Amendment.

### D. PLAINTIFFS FAILS TO STATE A CLAIM

#### 1. VAWA and Title IV-D do not provide a private right of action

Plaintiffs allege that Defendant Silver violated their rights under the Violence Against Women Act (VAWA), 34 U.S.C. § 12291 *et seq.*, and Title IV-D of the Social Security Act, 42 U.S.C. § 651 *et seq*. However, neither statute provides a private right of action for individuals to sue state officials.

*VAWA*

The Violence Against Women Act (VAWA) establishes federal protections for survivors of domestic violence, including funding for victim services, legal aid, and law enforcement training. 34 U.S.C. § 12291 *et seq.* However, VAWA does not create a private cause of action, and courts have consistently held that VAWA does not authorize lawsuits against state actors for alleged failures to protect victims or enforce protective orders. The Supreme Court in *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) expressly ruled that VAWA does not create an individual right to government enforcement of domestic violence protections.

Even if VAWA provided a cause of action (which it does not), Plaintiffs' vague and conclusory allegations fail to meet the pleading standard under *Iqbal*, 556 U.S. at 678. Plaintiffs claim that Defendant Silver failed to enforce trauma-informed and victim-centered judicial practices. However, VAWA does not require state court officials to adopt specific judicial practices, nor does it provide a remedy for individual plaintiffs who disagree with how state courts handle domestic violence cases. Since VAWA does not provide a private

13

right of action, Plaintiffs fail to state a claim under VAWA, and this claim must be dismissed with prejudice.

*Title IV-D*

Similarly, Title IV-D does not create an enforceable private right of action. Title IV-D of the Social Security Act, 42 U.S.C. § 651 *et seq.*, establishes federal requirements for state-run child support enforcement programs. Plaintiffs allege that Defendant Silver violated Title IV-D by failing to ensure fair enforcement of child support obligations and misapplying funds. However, Plaintiffs' Title IV-D claim fails for three independent reasons:

First, the Supreme Court in *Blessing v. Freestone*, 520 U.S. 329, 333 (1997) held that Title IV-D does not create enforceable individual rights to sue state officials for failures in child support enforcement. Courts have uniformly dismissed Title IV-D claims brought by individuals because the statute only establishes requirements for states to receive federal funding—it does not create enforceable rights for private litigants. *See e.g. Edgecombe Cty. Soc. Servs. v. Wallace*, No. 4:21-CV-78-FL, 2021 U.S. Dist. LEXIS 132663, at *4-5 (E.D.N.C. July 16, 2021).

Second, even assuming that Plaintiffs could bring a private action, Defendant Silver plays no role in Title IV-D's statutory scheme. Defendant Silver does not control child support enforcement decisions and has no enforcement authority over individual child support cases. Because Plaintiffs fail to allege any direct involvement by Silver in their child support cases, their Title IV-D claims fail for lack of causation. *See Iqbal*, 556 U.S. at 678 (requiring plaintiffs to allege specific misconduct by the named defendant).

Third, even If Title IV-D created a private right of action, it would not provide the relief plaintiffs seek. In rare cases where federal courts have found limited private

14

enforcement under Title IV-D, the remedy is limited to compelling the state to comply with federal guidelines—not awarding damages to individual litigants. *See Carelli v. Howser*, 923 F.2d 1208, 1213 (6th Cir. 1991) (holding that Title IV-D remedies are limited to compliance with federal funding requirements, not individual relief). Because Plaintiffs seek damages and modifications to their personal child support orders, their claims fail as a matter of law.

### 2. Plaintiffs' other claims also fail to state a claim.

*Due Process*

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish a violation of a constitutional or federally protected right committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs assert claims under 42 U.S.C. § 1983, alleging violations of due process, equal protection, and constitutional rights related to family court proceedings. Plaintiffs claim they were denied procedural and substantive due process in their family court cases, but they fail to allege facts to support their claims. Plaintiffs received notice and hearings in state family court proceedings, and their dissatisfaction with the outcome does not equate to a due process violation. And Plaintiffs' allegations that state courts ruled unfairly, excluded evidence, or imposed improper financial penalties do not constitute substantive due process violations.

*Equal Protection*

In order to state an Equal Protection claim under § 1983, a plaintiff must allege that they were treated differently from others similarly situated and that the discrimination was the result of intentional or purposeful discrimination. *Martin v. Duffy,* 858 F.3d 239, 252 (4th Cir. 2017). Equal protection claims require specific allegations of differential treatment, not general grievances. *See Iqbal*, 556 U.S. at 678.

15

Case 5:24-cv-00686-BO-KS    Document 31    Filed 02/17/25    Page 15 of 20

Here, Plaintiffs allege that North Carolina courts exhibit systemic gender bias against domestic violence survivors and custodial mothers. However, Plaintiffs fail to identify a specific discriminatory policy, law, or action by Defendant Silver, demonstrate intentional discrimination, or allege that similarly situated individuals were treated differently. Because Plaintiffs fail to allege specific instances of intentional gender discrimination, their equal protection claim must be dismissed.

*Fraud*

Plaintiffs' extrinsic fraud allegation fails under Rule 9(b). Fraud claims must satisfy the heightened pleading standard of Rule 9(b), which requires identification of: (1) who committed the fraud; (2) what fraudulent acts occurred; (3) when and where the fraud took place; and (4) how the fraud impacted the case. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Plaintiffs' allegations of extrinsic fraud by judges and courts fail are too generalized and broad to satisfy Rule 9(b). Importantly, Plaintiffs do not explain how Defendant Silver was involved in the alleged fraud. Because Plaintiffs' fraud claims fail to meet Rule 9(b)'s specificity requirement, they must be dismissed.

### E.  ALTERNATIVELY, THIS COURT SHOULD ABSTAIN

#### 1. *Younger* **Abstention applies.**

The Younger abstention doctrine prevents federal courts from interfering with ongoing state judicial proceedings that implicate important state interests, especially where the state provides an adequate avenue for review. *Younger v. Harris*, 401 U.S. 37, 43 (1971). This doctrine applies when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates an important state interest; and (3) there is an adequate opportunity

16

in the state proceedings to raise federal constitutional claims. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Plaintiffs' claims meet all three prongs of the *Younger* test, and no recognized exception applies.

First, Plaintiffs' claims involve ongoing state court proceedings. Plaintiffs challenge family court rulings involving child custody, protective orders, and child support enforcement, many of which are ongoing. Because family law matters are ongoing in state court, the first prong of *Younger* is satisfied.

Second, family law matters implicate important state interests. Child custody, domestic violence protective orders, and child support enforcement are core areas of state interest. Courts have consistently held that states have a compelling interest in domestic relations law, and federal courts should not interfere. *See Moore v. Sims*, 442 U.S. 415, 435 (1979) (holding that family law disputes, including child custody and abuse allegations, are areas of state interest warranting abstention). Additionally, federal courts have long recognized that state child support enforcement proceedings fall squarely within *Younger* abstention. *See Trainor v. Hernandez*, 431 U.S. 434, 448 (1977). Because this case concerns domestic relations and child welfare—issues traditionally within the state's purview—*Younger* requires abstention.

Third, Plaintiffs have an adequate opportunity to raise federal constitutional claims in state court. *Younger* abstention applies only if state courts fail to provide an adequate opportunity to raise constitutional challenges. Plaintiffs do not allege that North Carolina courts prevented them from raising federal claims in their child custody, protective order, or child support cases. Instead, they argue that state judges ruled against them incorrectly or unfairly. However, federal courts must assume that state courts will properly adjudicate

17

constitutional claims unless there is a showing of bad faith or systemic bias. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

Plaintiffs have multiple procedural avenues to raise federal claims in state court, including appealing adverse rulings through the North Carolina Court of Appeals, filing motions for reconsideration or relief in family court, and seeking review by the North Carolina Supreme Court.[2] Since North Carolina provides a full and fair opportunity for Plaintiffs to litigate their constitutional claims in state court, *Younger* abstention is appropriate.

### 2. The domestic relations exception precludes jurisdiction.

The domestic relations exception to federal jurisdiction precludes federal courts from hearing cases involving divorce, alimony, child custody, and other family law matters traditionally within the domain of state courts. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Powell v. Williams*, No. 5:14-CV-282-FL, 2014 U.S. Dist. LEXIS 105411, at *6-8 (E.D.N.C. July 11, 2014) (noting federal courts do not have jurisdiction to determine child custody or child support matters.) Under this doctrine, federal courts must abstain from adjudicating claims that seek to alter state-court determinations on custody, child support, or protective orders.

In this case, Plaintiffs challenge child custody determinations, protective order rulings, and child support enforcement decisions made by North Carolina state courts. Because these claims fall squarely within the domestic relations exception, this Court must decline jurisdiction and dismiss the case. Although Plaintiffs attempt to frame their case as a

---

[2] In addition, Plaintiffs can report alleged bias by judges or other misconduct to the North Carolina Judicial Standards. *See* N.C. Gen. Stat. § 7A-10.1.

constitutional challenge under 42 U.S.C. § 1983, the Fourth Circuit has repeatedly affirmed that domestic relations cases belong in state court, even when litigants assert constitutional violations. *See Cantor v. Cohen*, 442 F.3d 196, 202 (4th Cir. 2006) (holding that a plaintiff's § 1983 claims arising from child custody rulings were barred by the domestic relations exception). Since Plaintiffs' constitutional claims cannot be separated from the underlying domestic relations disputes, they are subject to mandatory abstention under the domestic relations exception.

### III. CONCLUSION

For the foregoing reasons, Defendant Mike Silver respectfully requests that this Court dismiss Plaintiffs' Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

Respectfully submitted, this the 17th day of February, 2025.

**JEFF JACKSON**
**Attorney General**

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-0091
Facsimile: (919) 716-6755
eobrien@ncdoj.gov
State Bar No. 28885
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this day a copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was served by placing the same in the United States mail, first-class postage prepaid, and addressed to the following:

Katherine Moore, J.D., M.S., CFE
3461 Lacewing Drive
Zebulon, NC 27597
kmoore@protectivemoms.net

Amy Palacios, NP
3832 Grovesner Street
Harrisburg, NC 28075
amypalacios79@gmail.com

Edyta Hanna Basista
5809 Magellan Way
Apt 203
Raleigh, NC 27612
ehbasista@gmail.com

This the 17th day of February, 2025.

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice