IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-686-BO-KS

KATHERINE MOORE, AMY PALACIOS, )
and EDYTA BASISTA, )
)
Plaintiffs, )
)
v. ) O R D E R
)
MIKE SILVER, in his individual and )
official capacities as Training and Services )
Director for North Carolina Administrative )
Office of the Courts, )
)
Defendant. )

This cause comes before the Court on plaintiffs' motions for preliminary injunction and defendant's motion to dismiss. The appropriate responses and replies have been filed, or the time for doing so has expired, and the motions are ripe for disposition. For the reasons that follow, the motion to dismiss is granted and the motions for preliminary injunction are denied.

## BACKGROUND

Plaintiffs, who proceed in this action *pro se*, filed a complaint against defendant Silver in the United States District Court for the Eastern District of Virginia. [DE 1]. The complaint was transferred to this district pursuant to 28 U.S.C. § 1404(a). [DE 3]. On December 30, 2024, plaintiffs filed an amended complaint, a memorandum of law in support of the amended complaint, and an emergency motion for preliminary injunction pursuant to Fed. R. Civ. P. 65 and memorandum in support. [DE 9; DE 10; DE 11; DE 12].[1]

---

[1] In the amended complaint, Anita Washington was no longer named as a plaintiff and Edyta Basista was added as a plaintiff. Only plaintiffs Katherine Moore and Amy Palacio have filed

Summons for defendant Silver were issued on January 9, 2025. [DE 15]. On January 31, 2025, plaintiffs filed a second emergency motion for preliminary injunction. [DE 21]. After receiving an extension of time from the Clerk, Silver filed a motion to dismiss and opposition to the motions for preliminary injunction. [DE 29; DE 30; DE 31]. Plaintiffs responded to the motion to dismiss and in support of their request for preliminary injunction, and later filed a motion for submission of all relevant documentation. [DE 32; DE 35]. Finally, plaintiffs have filed a motion for expedited consideration. [DE 37].

In their amended complaint, plaintiffs allege as follows.[2] Plaintiff Katherine Moore alleges that she has endured egregious judicial misconduct and systemic failures throughout custody proceedings with Scott Mills. In March 2021, Moore sought a domestic violence protective order after Mills allegedly assaulted Moore while Moore was pregnant. Judge Bell admitted an audio recording of Mills and medical staff regarding the assault into evidence, but played only three seconds of the hour-long recording. Judge Bell further barred Moore from submitting corroborating medical records. Moore sought another domestic violence protective order to protect her daughter, KM, after discovering evidence of potential abuse. Judge Braun denied the request for protective order and the judge's findings were allegedly riddled with errors. Moore further alleges that Mills initiated an action for custody and child support in a county where neither of them lived or worked. Moore moved to change venue which was eventually denied. Moore alleges that her attempts to seek justice have been thwarted by judicial retaliation and that judges have impugned her credibility and imposed financial penalties upon her without conducting a hearing.

---

notices of self-representation and financial disclosure statements in accordance with the Court's Local Civil Rules. *See* [DE 5].

[2] Because plaintiffs proceed *pro se*, and are therefore held to less stringent standards, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court considers the allegations in both plaintiffs' amended complaint and memorandum in support of the amended complaint. [DE 11; DE 12].

2

Plaintiff Amy Palacios alleges systemic failures in her attempts to protect herself and her children from an abusive ex-partner, Brad Urban. Palacios alleges that opposing counsel, Jay White, has acted unethically and misrepresented facts, harassed Palacios, and secured continuances and dismissals without legitimate grounds. Palacios alleges that Urban was deemed incompetent to face criminal charges and that, though Urban was charged with assaulting Palacios and restraining her in a locked room with chains, Urban was granted unsupervised visitation with their children and the court attempted to cast Palacios as the abuser. Palacios is further the subject of a district court gatekeeping order entered at the request of White, despite the fact that Palacios had a case pending at the North Carolina Supreme Court. Palacios alleges that White has wrongfully controlled access to her retirement funds and prevented her from fulfilling her equitable distribution obligations, resulting in her being threatened with contempt. Palacios alleges that the state court has consistently deferred to White, has denied Palacios due process, and has required Palacios to pay attorney fees without a hearing.

Plaintiff Edyta Basista alleges that she is a victim of domestic violence and was improperly arrested and subjected to emotional trauma by opposing counsel and a local magistrate. She lost custody of her children after reporting abuse. Basista suffers from post-traumatic stress disorder and is a survivor of childhood abuse and the September 11, 2001, attacks. Basista alleges that, despite having presented medical records, police reports, and corroborating witness testimony, the court disregarded her evidence and did not implement trauma-informed training for which North Carolina has received funding under the Violence Against Women Act. Basista further alleges that protective orders in place to protect her and her children were not enforced, which left them vulnerable to additional harm in contravention of Title IV-D of the Social Security Act. Finally, Basista alleges she was subjected to financial penalties, including attorney fees, without a hearing.

3

Plaintiffs allege that extrinsic fraud permeates their underlying custody and domestic cases, which has undermined their constitutional rights as well as statutory protections under Title IV-D of the Social Security Act and the Violence Against Women Act (VAWA). Plaintiffs allege that these violations must be addressed in order to ensure procedural fairness, compliance with federal mandates, and protection of survivors of domestic violence. Plaintiffs allege claims pursuant to 42 U.S.C. § 1983 for denial of due process based upon extrinsic fraud, failures to enforce VAWA mandates, violations of Title IV-D, and violations of equal protection based on gender. In their prayer for relief, plaintiffs seek a declaratory judgment that Silver violated their rights under the Fourteenth Amendment and failed to enforce federal mandates under VAWA. Plaintiffs also seek an injunction requiring defendant to enforce trauma-informed and victim-centered practices in North Carolina courts, impose a stay of all future court proceedings for plaintiffs, and provide training for all court personnel and law enforcement on handling domestic violence cases, with audits to ensure compliance. Plaintiffs seek compensatory damages, punitive damages, and attorney fees.

In their first motion for preliminary injunction, plaintiffs seek a preliminary injunction to enjoin Silver in his official capacity from further violating plaintiffs' constitutional and statutory rights under the Fourteenth Amendment, VAWA, and Title IV-D of the Social Security Act. Plaintiffs seek an order which would require Silver to enforce protective orders which have previously been granted to plaintiffs and their children; implement trauma-informed, victim-centered practices mandated by VAWA; halt the imposition of retaliatory financial penalties and unwarranted sanctions against plaintiffs; and stay the enforcement of prior judicial orders which inflict harm or contravene constitutional or statutory mandates.

4

In their second motion for preliminary injunction, plaintiffs seek issuance of a preliminary and permanent injunction which enjoins defendant Silver from enforcing or executing any state court orders which did not adhere to fundamental tenants of constitutional fairness, that did not comply with VAWA, and that expressly exhibit extrinsic fraud. Plaintiffs further seek an injunction which would: stay all proceedings in the state courts concerning plaintiffs' custodial rights as well as any orders which would inhibit plaintiffs' ability to engage in parental decision-making; order the removal and sealing of any publicly disclosed personal identifying information of plaintiffs or their minor children and direct action to remediate and prevent further disclosures; mandate that the courts comply with VAWA and the Americans with Disabilities Act; prohibit adverse rulings against plaintiffs which stem from the failure to provide legally required protections by the courts; vacate or stay the enforcement of court orders obtained through extrinsic fraud; require state court officials to implement safeguards consistent with due process, the Fourth Amendment, and equal protection; and enjoin defendant from using fraudulent, time-barred, or defective criminal charges to interfere with plaintiffs' parental rights.

Silver has moved to dismiss plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1); 12(b)(6).

## DISCUSSION

A. Legal standards.

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quotation and citation omitted). A movant must make a clear showing of each of four elements before a preliminary injunction may issue: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3)

5

Case 5:24-cv-00686-BO-KS    Document 38    Filed 04/25/25    Page 5 of 17

that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)). The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual

allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

B. Motion to dismiss.

   *a. Subject matter jurisdiction*

Because the motion implicates the Court's subject matter jurisdiction over this action, the Court considers first Silver's motion to dismiss. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998) (subject matter jurisdiction is a threshold question).

Silver argues that plaintiffs lack standing to pursue their claims against him. Silver is named as the Training and Services Director for the North Carolina Administrative Office of the Courts and is the sole defendant in this action. To have standing to sue under Article III, a plaintiff must demonstrate that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 and *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). The plaintiff bears the burden of establishing standing, and at this stage of the proceeding must have alleged facts which clearly demonstrate standing. *Spokeo*, 136 S. Ct. at 1547. The elements of standing are "not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan* 504 U.S. at 561. Finally, a plaintiff must have standing to prosecute each claim and for each form of relief sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

Plaintiffs allege that they each experienced extrinsic fraud, denials of due process, lack of equal protection, judicial and attorney misconduct, and the failure to enforce VAWA and Title IV-D protections during the course of their state family court proceedings. Plaintiffs specifically

7

complain about their treatment by state court judges and attorneys. But the conduct of which plaintiffs complain is not fairly traceable to Silver, who appears to be responsible for training at North Carolina's Administrative Office of the Courts. To be fairly traceable "requires 'a causal connection between the injury and the conduct complained of.'" *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) (quoting *Lujan*, 504 U.S. at 560).

None of plaintiff's allegations would support that any conduct by Silver concerning training on VAWA or Title IV-D, or lack thereof, caused any of the alleged injuries plaintiffs suffered. Rather, as plaintiffs' allegations make clear, their grievances are with the state court judges who issued rulings against them and attorneys involved in their cases. Plaintiffs in opposition argue that they have adequately pleaded injuries which are fairly traceable to Silver, because Silver is responsible for overseeing training programs for judges and court staff. But plaintiffs have not alleged facts which would clearly demonstrate that Silver *did* fail to train the state court judges and staff regarding VAWA and Title IV-D, or that it was as a result of that failure that plaintiffs suffered any alleged injuries. The vast majority of the relief which plaintiffs seek is further not redressable by a judicial decision against Silver. For example, plaintiffs seek as relief an order directing Silver, along with his agents and assigns, to refrain from engaging in any form of retaliation against plaintiffs. [DE 12 at 27]. But plaintiffs' complaint fails to allege any facts which would show that Silver, as director of training, has any authority over any individual within the state court system who could retaliate against plaintiffs by, among other things, interfering with plaintiffs' ability to participate in court proceedings or harassing plaintiffs. *Id.* At bottom, plaintiffs lack standing to pursue their claims.

Even if plaintiffs have Article III standing, the Eleventh Amendment bars some of their claims for relief against Silver in his official capacity.

8

Plaintiffs do not dispute that their claims against Silver in his official capacity are claims against the state and therefore barred by Eleventh Amendment immunity. *See Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1138 (4th Cir. 1990); *see also Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir. 2003) (state official acting in official capacity protected by Eleventh Amendment immunity). Rather, plaintiffs contend that they only seek prospective injunctive relief against Silver in his official capacity under *Ex Parte Young*, 209 U.S. 123 (1908). Under *Ex Parte Young*, "federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998).

To the extent plaintiffs seek relief related to the provision of training to state court personnel, this is fairly construed at this stage as prospective relief for an ongoing violation. *See S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) (whether claim has merit is not implicated in *Ex parte Young* analysis). But insofar as plaintiffs seek, *inter alia*, a stay of all future court proceedings, a prohibition on retaliation against plaintiffs, and a restoration of their parental rights, that relief is retrospective and not targeted at an ongoing violation, and is thus barred by the Eleventh Amendment. *See Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016) ("even [where] the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation."); *Republic of Paraguay*, 134 F.3d at 628 (where effect of an injunction "would be to undo accomplished state action," relief is not prospective and does not fall within the *Ex parte Young* exception).

9

Finally, and to the extent plaintiffs seek review of the state court decisions regarding custody and other family matters, those claims are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine prevents federal district courts from exercising jurisdiction over challenges to state court decisions. *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002). "The *Rooker–Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "[I]f the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006). "But where the federal complaint presents an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Jonathan R. by Dixon v. Just.*, 41 F.4th 316, 340 (4th Cir. 2022) (quoting *Exxon Mobil Corp.*, 544 U.S. at 293).

Plaintiffs allege in their complaint and argue in their opposition that their claims are not barred by the *Rooker-Feldman* doctrine because they challenge systemic judicial misconduct rather than the decisions in their individual cases. A fair reading of plaintiffs' claims, however, shows they challenge the underlying state court judgments and that their claims are otherwise inextricably intertwined with the state family court proceedings.

Plaintiffs allege that the state court judges and personnel engaged in extrinsic fraud, that they imposed attorney fees and financial obligations without hearings and without due process,

that there is bias against survivors of domestic abuse and in favor of abusers in family court proceedings, and that evidence was improperly excluded or facts misstated in the state judges' decisions. Where plaintiffs seek redress for injuries caused by these state court decisions, their claims barred by *Rooker-Feldman*. *See Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278, 290 (4th Cir. 2013) (applying *Rooker-Feldman* to claims arising from state custody decisions). So to where plaintiffs bring constitutional claims, such as their due process claim based on alleged extrinsic fraud in the state's courts. *Id.* (dismissing due process claim based on extrinsic fraud as "necessarily circumscribed by the *Rooker-Feldman* doctrine.").

### b. Failure to state a claim

To the extent that the Court has jurisdiction to consider plaintiffs' claims, they are nonetheless subject to dismissal. First, neither VAWA, 34 U.S.C. §§ 12291, *et seq.*, nor Title IV-D of the Social Security Act, 42 U.S.C. §§ 651, *et seq.*, provides for a private right of action for individuals.

As is relevant here, VAWA provides for grants to support training in state courts on, among other things, the impacts of domestic violence on the victim and how domestic violence plays a role in custody and visitation determinations. 34 U.S.C. § 12372; *see also Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1057–58 (9th Cir. 2005) ("In VAWA, Congress took steps to provide judges with training on the topics of rape and domestic violence."). Nothing in this provision suggests that there is a private right of action to sue for the failure to implement training. *See also Jones v. Union Cnty. Sheriff's Off.*, No. 3:18-CV-509-KDB-DCK, 2019 WL 7708935, at *10 (W.D.N.C. Sept. 23, 2019), *report and recommendation adopted,* No. 318CV00509KDBDCK, 2019 WL 5692753 (W.D.N.C. Nov. 4, 2019) (dismissal of claim under VAWA as there is no private right of action). "Title IV-D provides appropriations to states for the

11

purpose of enforcing child support obligations." *Edgecombe Cnty. Soc. Servs. v. Wallace*, No. 4:21-CV-78-FL, 2021 U.S. Dist. LEXIS 132663, at *4 n.1 (E.D.N.C. July 16, 2021) (citing 42 U.S.C. § 651). But there is no private right of action under Title IV-D. *Quinn v. N. Carolina Dep't of Health & Hum. Servs.*, No. 3:20CV169-GCM, 2020 WL 4468728, at *2 (W.D.N.C. Aug. 4, 2020) (listing cases).

Plaintiffs argue in opposition to the motion to dismiss that they do not bring direct claims under VAWA or Title IV-D. They argue instead that they have invoked 42 U.S.C. § 1983 to address the constitutional violations which have resulted from the state's failure to enforce these federal mandates. Plaintiffs rely on *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687 (4th Cir. 2019), to contend that VAWA's antidiscrimination mandate, 34 U.S.C. § 12291(b)(2), is enforceable against state actors through § 1983. [DE 32 at 23].

> In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law. Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448–449, 107 L.Ed.2d 420 (1989). We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. *Wright,* 479 U.S., at 430, 107 S.Ct., at 773–774. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. *Id.,* at 431–432, 107 S.Ct., at 774–775. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997). Plaintiffs have not demonstrated that their cited section of VAWA, which concerns grant conditions, or the training provision of VAWA is a federal right which gives rise to an action under § 1983. Plaintiffs argue that "courts have recognized that VAWA's funding conditions impose enforceable duties on recipients, particularly in areas related to court administration and law enforcement training", [DE 32 at 23], but they cite no case so holding. As concerns Title IV-D, "Congress did not create 'a federal right to force a

12

state agency to substantially comply with Title IV-D[.]" *Edgecombe Cnty. Soc. Servs.*, 2021 U.S. Dist. LEXIS 132663, at *4-5 (quoting *Blessing*, 520 U.S. at 332).

Moreover, none of plaintiff's constitutional claims appear tied to any action or inaction by defendant Silver. Plaintiffs cite the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiffs complain, for example, that they were denied procedural due process because monetary sanctions or attorney fees were imposed in the absence of a hearing and due to the exclusion of evidence by the state judges. They further allege that they were denied equal protection based on their status as domestic violence survivors.[3]

Plaintiffs allege no facts which would support that Silver, the only named defendant in this action, had any connection to the imposition of attorney fees, the exclusion of evidence, or any alleged unequal treatment of domestic violence survivors. Plaintiffs have not plausibly alleged any action by Silver which could be found to have been "beyond the outer limits of legitimate government action," nor have they alleged the presence of any intentional discrimination by Silver.

To the extent plaintiffs rely on their general allegation that their rights were violated due to the lack of training of state judges and personnel, such allegations are speculative. Indeed, the

---

[3] To succeed on a procedural due process claim, a plaintiff must be able to show "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir.1988)). To succeed on a substantive due process claim, a plaintiff must ultimately demonstrate "(1) that he had property or a property interest; (2) that the state deprived him of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Quinn v. Bd. of Cnty. Commissioners for Queen Anne's Cnty., Maryland*, 862 F.3d 433, 443 (4th Cir. 2017) (quoting *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 827 (4th Cir. 1995)) (alterations omitted). To state a claim under the Equal Protection Clause, a plaintiff must allege that she is similarly-situated to those from whom she has been treated differently and that this unequal treatment was due to intentional discrimination. *Martin v. Duffy*, 858 F.3d 239, 252 (4th Cir. 2017).

Court has located only two substantive allegations which relate to Silver in the amended complaint. Plaintiffs allege that "Silver's failure to implement and enforce [VAWA-informed] practices perpetuated systemic discrimination against Plaintiffs" [DE 12 at 8] and that North Carolina's courts, under Silver's "purview," systematically failed to comply with VAWA and Title IV-D mandates. *Id.* These allegations, even taken as true, are conclusory, speculative, and fail to plausibly allege that Silver is liable for any of the misconduct alleged in the amended complaint.

The same is true for plaintiffs' fraud claim. Fraud claims must satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standard. *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). Plaintiffs' allegations fail to identify when, where, or how Silver engaged in any fraud.[4]

At bottom, the gravamen of plaintiffs' complaint is plainly that the state family court proceedings were unfair, biased, and riddled with error. But this Court cannot review those decisions. While plaintiffs have included claims under § 1983, that does not change the result. Insofar as plaintiffs could seek to remedy a lack of training of state court personnel regarding domestic violence and child custody matters, their complaint lacks any plausible allegations in support of such a claim. Plaintiffs have therefore failed to state a claim upon which relief can be granted.[5]

---

[4] In the alternative, as the federal claims are appropriately dismissed, the Court would decline to exercise supplemental jurisdiction over plaintiffs' state law fraud claim. 28 U.S.C. § 1367(c).

[5] Plaintiffs also request the right to amend their complaint to include additional plaintiffs and defendants "as necessary." [DE 11 at 10]. Although plaintiffs proceed *pro se*, the Court will not construe this request as a motion for leave to file an amended complaint. Plaintiffs have failed to comply with Local Civil Rule 15.1, and have not specifically identified any additional defendant or plaintiff.

14

### c. *Abstention*

Silver also argues that *Younger* abstention should be applied. *Younger v. Harris*, 401 U.S. 37, 38 (1971). Under *Younger*, a federal court must "abstain from exercising jurisdiction and interfering in a state [] proceeding if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges." *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008).

Plaintiffs argue that there are no ongoing state judicial proceedings. But their complaint seeks a stay of plaintiffs' future court proceedings and an injunction against retaliation in the state courts for claims related to paternity, custody, and abuse. Child custody and family matters traditionally implicate important state concerns and plaintiffs have an opportunity to raise any federal claims in state court proceedings. The Court agrees that it should abstain from hearing plaintiffs' claims for injunctive relief under *Younger*. *See Montgomery v. Johnston Cnty. Dep't of Soc. Servs.*, No. 5:23-CV-00041-FL, 2023 WL 5170082, at *4 (E.D.N.C. June 2, 2023), *report and recommendation adopted*, No. 5:23-CV-41-FL, 2023 WL 4760710 (E.D.N.C. July 26, 2023), *aff'd*, No. 23-1862, 2024 WL 3617550 (4th Cir. Aug. 1, 2024).

Finally, there is "long established precedent that federal courts are courts of limited jurisdiction and generally abstain from hearing child custody matters." *Cantor v. Cohen*, 442 F.3d 196, 202 (4th Cir. 2006). Although plaintiffs have filed constitutional claims, at bottom, what plaintiffs seek, and in particular the relief they seek in their preliminary injunction motions, is that which this Court must abstain from considering.

In sum, the Court grants the motion to dismiss. Plaintiffs lack standing to pursue their claims against Silver. Even if plaintiffs have standing, their claims against Silver in his official capacity for retrospective relief are barred by the Eleventh Amendment. The *Rooker-Feldman* doctrine further bars plaintiff's claims, as plaintiffs either seek to directly overturn state court decisions or they seek redress for injuries caused by those decisions. To the extent this Court could be considered to have subject matter jurisdiction over plaintiffs' amended complaint, plaintiffs have failed to plausibly allege any claims upon which relief could be granted. The Court further determines that it should abstain from hearing plaintiffs' claims for injunctive relief under *Younger* and otherwise abstain from considering plaintiffs' claims which implicate state custody and domestic proceedings.

C. Motions for preliminary injunction.

In light of the foregoing, plaintiffs have failed to demonstrate a likelihood of success on any of their claims. Moreover, the specific relief sought by plaintiffs in the motions for preliminary injunction is plainly barred by *Rooker-Feldman*. Plaintiffs ask the Court to enjoin enforcement or execution of state court orders which stripped them of their custodial and decision-making rights over their minor children and to stay all pending custody proceedings and any orders which would inhibit plaintiffs' parental rights. *See* [DE 21 at 41]. This relief would require the Court to undo what the state courts have done. The Court would further abstain from granting any of the relief sought in the preliminary injunction motions as such relief concerns custody and domestic matters best left to the state courts. The motions for preliminary injunction are therefore denied.

D. Remaining motions.

Plaintiffs' motion for leave to file excess pages [DE 22] is granted. The motion to withdraw as attorney for defendant Silver [DE 33] is granted. Plaintiffs' motion for submission of all relevant

16

Case 5:24-cv-00686-BO-KS    Document 38    Filed 04/25/25    Page 16 of 17

documentation [DE 35] is denied is moot. Plaintiffs request that opposition memoranda as well as other documentation be "submitted" for the Court's review. Although the clerk marks only motions as submitted to the Court, all relevant documents have been submitted, reviewed, and considered. Plaintiffs' motion for expedited consideration [DE 37] is also denied as moot.

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiffs' motions for preliminary injunction [DE 9; DE 21] are DENIED. Defendant's motion to dismiss [DE 30] is GRANTED. Plaintiffs' motion for leave to file excess pages [DE 22] is GRANTED. The motion to withdraw as attorney for defendant Silver [DE 33] is GRANTED. Plaintiffs' motion for submission of all relevant documentation [DE 35] is DENIED AS MOOT. Plaintiffs' motion for expedited consideration [DE 37] is also DENIED AS MOOT.

The clerk is DIRECTED to close this case.

SO ORDERED, this 24 day of April 2025.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE